Case number 2014-21-37, Patsy Borum v. Illinois Central Railroad Company et al. Argument to exceed 15 minutes per side. Mr. Sanders for the appellant. May it please the court, I would request to reserve 3 minutes for rebuttal. I'm confident that the court has had an opportunity to review the pleadings and if the court would allow I'd like to forego a recitation of the facts and jump straight into the argument. Way to go. It is our contention that Ms. Borum was the victim of discrimination on the basis of her race. I don't believe it's disputed that a plaintiff may establish a prima facie case of employment discrimination by showing that the plaintiff was a member of a protected class, that an adverse employment action was taken against the plaintiff, that the plaintiff was qualified for a position, and that the plaintiff was replaced by one who was not a member of the protected class. I believe that in our case... I think where you have the difficulty here is the adverse employment action. That's where I'm going. Okay. And let me get out of your way. Oh, no. I believe in our case we clearly established, Your Honor, that there was an adverse employment action. Case law dictates that we must consider whether the action was material adverse and not simply a mere inconvenience or an alteration of job responsibilities. Additionally, we must consider whether or not there is an objective means of establishing that the action was adverse. The defendants, I believe, give a very simplistic articulation as to the employer's action. They suggest to the court that it was contemplated to eliminate Ms. Borm's position and that several days thereafter it was determined that the position would not be eliminated. It is our contention that the actions of the employer were significantly more egregious than that simplistic explanation. The decision to eliminate Ms. Borm's job was made in November 2011, immediately after she had made a complaint as it relates to discrimination. That fact is not contested. Now, is it fair on whether she suffered an adverse employment action? Well, I believe that's one of the elements, but I think we have to look at things in their totality. They know that her job is contemplated being eliminated soon as she makes the discrimination claim. She was aware that there was an arrangement made in December 2011 for Cameron to fly to Troy, Michigan to train to assume her position. She was informed that her job was being eliminated and that she was terminated in January 2012. She was aware that her staff was informed that she had been terminated and that they no longer reported to her, but rather to Cameron. She was aware that Cameron had been introduced to her staff as her replacement. She was aware that she was being replaced by someone who was not a member of the protected class. Are you saying that simply that awareness of a prospective event that never really came to fruition is sufficient to constitute an adverse action under current jurisprudence? Well, yes, two things there, Your Honor. One, I am saying that the totality of the circumstances constituted an adverse employment action. And as to whether or not it came to fruition, she began to clean out her office, to vacate the premises pursuant to the notice that she was terminated. But also, what the court said... I mean, does that give rise to a federal cause of action? The awareness that Judge Donald just spoke about and starting to clean out your desk, that's an adverse action for the purposes of these federal claims? Well, I believe that constitutes termination. And I believe that once you have... What case would you cite us to for that proposition? I mean, you're still coming to work, you're still getting paid, but some people have been told that your position is being eliminated and you're cleaning out your desk, even though you're still getting paid, and that's termination. Is there a case that's kind of factually near that? Well, first of all, I believe that what occurred constituted termination. But I believe that it is established that you don't have to be terminated in order for there to be an adverse employment action. The courts have determined that a less distinguished title, significantly diminished material responsibilities are indicia of adverse employment actions. Even though that's true, she never experienced those things. All of this occurred over a period of several days, and then the company said, we rescind all of that. We revert back to the status quo. Because, even though they had said before, this is not a performance-based decision. It is, I guess, a work necessity decision, and you're affected, but it's not about your job performance. Well, first, Your Honor, you said that she never experienced those things. She never experienced a less distinguished title. She never experienced significantly diminished material responsibilities. I believe that the facts in the case bear out the contrary. Particularly, in the lower court's finding of facts, the judge stated, and I quote, Following the January 10th meeting, McKelvey informed the employees whom Borm supervised that Borm was no longer their manager and that they would now report to Cameron. Additionally, the court stated in its opinion, and I quote, McKelvey made arrangements for Cameron to travel to the Troy, Michigan office in January 2012 to begin working with Borm's staff. Mr. Sanders, let me ask you, I guess, maybe the same question in a different way, all right? I think when you boil this down, she's told on a Tuesday that her position's going to be eliminated. She's given three different options about what she can do, one or two of which might involve remaining with the company. She's told all this on a Tuesday. She continues to go to work for the next two days. She's paid. She's in her office. The decision is rescinded 48 hours later on a Thursday. She's been paid the whole time. She hasn't lost her position. It's a 48-hour interval where she thought she was going to lose her position, but she doesn't. What case would you point us to that says that scenario, as I described it, not all the other stuff, just I think that scenario somehow is an adverse employment action? First of all, I would point you to a case, but I would respectfully disagree with your assessment of the facts that she had not lost her authority or lost her job in that time period. But I would refer you to the Smith v. City of Salem case, 378 F. 3rd, 566, a Sixth Circuit case, in which the court found that a suspension of a fire lieutenant for a 24-hour period constituted an adverse employment action. But a suspension is different, though, isn't it? I mean, typically a suspension, was it without pay in that instance? It was without pay, and retroactively he was given his pay. I mean, we do have case law from the Supreme Court saying retroactively making up the pay doesn't undo the harm, but that doesn't help you here because she was paid current. Well, we don't know whether there was a decision made to not pay her, and by the time the payday came, she got her money. But the issue is, I believe, Your Honor, respectfully, that she had been stripped of her authority, she was made aware of that, her subordinates were made aware of that, and she was replaced by someone who was not a member of the protected class. Moreover, the lower court even states in their opinion that there was some question of fact as to what her status was during that three-day period. But yet the lower court goes on to make a determination that she was not fired in that three-day period, when particularly her supervisor, Mr. McKelvey, even testifies that to his knowledge she was not working during that three-day period. So to suggest that during that three-day period she continued to go to work, I don't believe is a fair characterization of the facts. She continued to go into the place of her former employment to clean out her office. She was not working. I don't understand how we can say it's former employment. Let me ask you this question about the record. My understanding of the record is that it's undisputed that at the conclusion of this meeting, where she's told her position is going to be eliminated, you have to make a choice between these three options, that she says, wait a minute, I have this settlement agreement, you can't do this. And Taylor promises to investigate, and your client, on the other hand, said, after I hear back from Taylor, I'll let you know which of these three options I want to exercise. Now, those facts are undisputed, right? Well, I don't recall Taylor making a promise to her to investigate. I know there was an investigation, and I know my client was silent as it relates to being told to give them the option of her selection. The point being that if he's checking into the settlement agreement issue, she has not even exercised any of the options. I mean, this isn't even an unexecuted decision. It's sort of an open question at this point, what's going to happen. No, I clearly disagree, Your Honor. The facts bear out that her supervisor was aware that she was clearing out her office. If the facts are as you suggest, I believe there would have been some affirmative action to say, wait, Ms. Cameron, don't come in and begin to train for her position. Wait, I'm not going to inform your subordinates that you have been terminated and being replaced. Wait, I'm not going to allow you to clear out your office because we don't know if this termination is going to be official. Those things were done, and she was made aware of those things. And those things had a detrimental psychological effect on her. To suggest to her subordinates that she's terminated, to begin to train someone to replace her, to have her clean out her office, some may say that that is if there were damages, they were diminished. But who's to make that determination? If, in fact, she was terminated, shouldn't a jury decide the extent of her damages? I see the clock has struck red, unless there are questions. All right. You can have your rebuttal. Thank you. Holly Robbins Good morning. May it please the Court, my name is Holly Robbins, and I represent the Illinois Central Railroad Company and Colin McKelvey in this race discrimination and retaliation lawsuit filed by Ms. Borum. The district court correctly granted summary judgment in this case, and one of the key issues clearly was the alleged adverse job action. This is a case where Ms. Borum did not like the way she was managed, but she lacks evidence to support allegations of race discrimination or retaliation. She's a current employee. She has been the manager of commercial motor vehicles since 2001. She was never demoted, she was never transferred, she was never disciplined, and she was never fired. And that's, I think, the crux of the issue here. Her claim arises from this incident when the decision was made to eliminate her position to help increase efficiencies in that motor vehicle department. And the news was delivered to her indeed. And she then informed Mr. McKelvey, her manager, and Mr. Taylor from Human Resources that in 2001 she'd entered into an agreement that provided certain job protection. They said, we're going to go look at that. We need to determine whether that's accurate. And indeed they did go look at it, and after a period of a couple of days they came back and said, never mind, you still have your job. The job elimination was rescinded. Ms. Borum did not lose a day of pay. There was no interruption in her pay, which I think is a distinction from some of the cases that Ms. Borum has cited where there was an interruption in pay for some period of time. She claims that she did not work during that period, but she came to the office every day and spent the day there cleaning out her office, as she testifies. She also did tell them that she would make a decision as to whether she would take certain other positions or what course she would take after she heard back from Mr. Taylor and Mr. McKelvey about her 2001 agreement. So clearly she thought that her job was going to stay in place, and she was waiting to hear them tell her that, and she continued to go to work. So although the job elimination was communicated, it never took effect. Without showing an adverse job action, Ms. Borum cannot make a prima facie case of discrimination, nor can she make a prima facie case of retaliation. You didn't say that the job termination never took effect, but when that decision was communicated, the employer didn't say the termination is effective at some date in the future. It was, at the time, immediate as of the communication, correct? It's true they didn't say it's going to take effect at some date in the future, but they did say, we're going to go back and look at what you've told us. That is after she inquired, does this termination violate the settlement agreement? That is after she inquired about it, because they didn't know about it. Neither Mr. Taylor nor Mr. McKelvey was aware of that agreement. So at the time the decision to terminate was communicated to her, it was communicated, before she spoke up, it was communicated to be effective then? It was communicated to be effective then, that was the intention, although they were going to give her the time to clear things out. This wasn't one of those things where someone was going to walk her out to the parking lot. I think she was going to be given time to clear out her office and so forth. And indeed, she was paid during all of that time. There's also case law to the effect, Your Honor, that a job termination, even where someone is told you're fired immediately, but then rescinds it quickly without any kind of financial effect on that person, that that does not constitute an adverse job action. What about the co-workers being told that her position was being eliminated and that she would no longer be there as an adverse job action? Again, I don't see that as an adverse job action, and I don't see case law that supports that the fact that co-workers are aware of a job elimination is an adverse job action. In fact, in this situation, Ms. Cameron, who did come to the United States to start training, she never came to Troy. She was told, stay there, don't come, because they realized that there wasn't going to be this change. Ms. Borum then continued to be the supervisor without incident. She was asked about whether there was anything that came about with her employees. Did they treat her differently? There was no indication that there was any problem with her employment or her ability to supervise as a result of her being told and them being told that her job was being eliminated. It was told to her. I don't think there was any announcement as to the reason for the job elimination, but she was told this wasn't performance-based. It was simply an issue of efficiencies in the department and a belief that they could cut back and have the work still be done completely. Again, no lack of pay, no gap in pay, as in some of these other cases. She came to the workplace, and they did check on the agreement, and they rescinded the job elimination. So, at best, there's a de minimis effect, and the case law, both on race discrimination and on retaliation, indicates that a de minimis job action does not support a race discrimination or a retaliation claim. She cannot make a prima facie case, and the district court correctly found that. There are also... What's an example of a case that says that? That says a de minimis job action? I will give you one, Your Honor. I think there are several cited, but I think Coxus, mere inconvenience is not an adverse job action. Keaton, a term of only hours is not an adverse job action. Coffman, de minimis exception for temporary actions. So there are several cases that say that. Good parentheticals, too. I appreciate it. So, in addition, there really was no replacement here. There was a plan for Ms. Cameron to take on most of Ms. Borum's duties, but that plan was never executed. Ms. Borum continued to supervise the same group of people to do the same job, and Ms. Cameron never actually took over her job actions and never even came to Troy to talk to the employees. In addition, though this wasn't addressed by the district court, even if Ms. Borum could make a prima facie case of discrimination or retaliation, given the burden shifting here, the company has stated a legitimate nondiscriminatory reason for the termination of her employment, and the plaintiff is unable to show any pretext. The main argument there seems to be that they should have then, if they didn't fire Ms. Borum, they should have fired Ms. Cameron. But there's a critical difference between Ms. Borum and Ms. Cameron in that Ms. Cameron was sitting in Edmonton and the company felt that it needed somebody there. There's certainly no case law that would indicate that a company has to consider moving someone not just to a different office but to a different country in order to show that there is no pretext. Ms. Cameron also had relationships with the vendors in Edmonton. Really, I think the pretext arguments that Ms. Borum makes boil mostly down to her feelings. She felt that Mr. McKelvey was nicer to Ms. Cameron than to her, and that is not enough to support a pretext argument. There are some stray remarks that are referred to, but again, they really don't impact the decision that was made here. Some of them are from people who have absolutely nothing to do with the decision and to whom she hadn't reported in several years. With respect to the retaliation claim, we can apply the same analysis with respect to the adverse job action, the same analysis with respect to the lack of replacement, and the same analysis with respect to the legitimate reason and the pretext argument. In addition, for the retaliation claim, there are some extreme issues with causal connection. She bases the retaliation claim on two issues, one being her 1999 claim that was settled in 2001, and then the other being a complaint that she had made about discrimination that she believed was happening against some other women at the company. With respect to that 1999 case settled in 2001, it's in the far too distant past to have had an effect here. It also wasn't something that Mr. McKelvey knew about, and it doesn't really make sense. It doesn't make sense that the company would wait 10 years and decide to eliminate her position based on this 1999 case and 2001 agreement, and then when she tells them that the agreement exists, go back and rescind the decision. In fact, she wasn't fired because of that case and because of that agreement, rather than having her job eliminated or being communicated that the job would be eliminated because of it. Had they considered it, there wouldn't have been a job elimination in the first place. With respect to the HR complaint, there's no evidence that either Mr. McKelvey or Mr. Zunti, who made the decision, was aware of that complaint. They weren't involved. She did not make the complaint to them, and the case law does not actually support imputing knowledge of the company to all supervisors who work for the company. They had to know in order to make a decision based on a particular complaint. I want to just touch on Mr. McKelvey. He was not the decision-maker but was involved in the decision, and all of the same arguments that apply to the company apply to him. Particularly, I would say, with respect to the retaliation claim, he did not know about the 2001 agreement, and he did not know about the 2011 complaint, and those facts are fatal to the retaliation claims against him. In conclusion, Your Honors, Ms. Borum can question and she can disagree with management decisions, and that's her prerogative, but that doesn't mean that she can support a discrimination or a retaliation case. In this case, she expressed disagreement with her job elimination, and that decision was rescinded. She remains employed. The district court decision should be upheld. Thank you. Thank you. A couple of points I would like to address. First, counsel argued that Ms. Cameron never replaced Ms. Borum. Particularly as it relates to that, Mr. McKelvey, Ms. Borum's supervisor, testified in his deposition, pages 39 through 41, page ID number 292-293, and what did you tell the staff? I told them that a decision had been made to eliminate the managers at the CMB office, and that going forward, their operation, they would be reporting to Colleen Cameron. Moreover, the judge, in his opinion, stated, RE27, page ID number 7, quote, Following the January 10th meeting, McKelvey informed the employees whom Borum supervised that Borum was no longer their manager and that they would now report to Cameron. So clearly, Cameron did indeed replace Borum. Additionally, I would like to address whether or not the circumstance that I described constitutes an adverse employment action. And I believe the crux of the argument being made by defendants is that this was a short period of time and there was no loss of pay. I would urge the court to consider the line of decisions that we cite in our brief, particularly Supreme Court case Hamms v. Forklift Systems, Inc., 510 U.S. 17, 1993, as well as the Eastern District of Michigan case Cooley v. Consolidated, Rail Corp. 561 F. Second 645. Basically, the courts have said in those opinions that a term, condition, or privilege of employment is made out by showing a nexus between the conduct and the employment situation, and that conduct affects employment if it has the effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. I believe that in this circumstance, a case can be made out to a jury that the adverse action taken against Ms. Bourne unreasonably interfered with her work performance. Be it a short period of time, for three days, she was no longer a supervisor. The company knew about it, her subordinates knew about it, and it had a psychological effect on her as she testified. Counselor, you might want to wrap up. I see your red light is on. Thank you, Your Honor. Just last, as it relates to pretext, the defendants have indicated that because of a relationship Cameron had with individuals in Canada, that they could not consider Bourne for Cameron's position. Yet the defendant clearly testified when asked were there any jobs that Cameron performed that Bourne could not perform. His answer was an unequivocal no. McKelvey Deposition, pages 48 through 49. Thank you, Your Honor. Thank you, and the case is submitted.